**LITTLER MENDELSON, P.C.**
Lauren J. Marcus, N.J. Bar No. 030012009
Anastasia Stylianou, N.J. Bar No. 198022017
One Newark Center, 8th Floor
Newark, New Jersey  07102
973.848.4700
*Attorneys for Defendant*
*Imperfect Foods, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALQUAN BING,<br><br>                  Plaintiff,<br><br>vs.<br><br>IMPERFECT FOODS, INC., JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>                  Defendants. | Civil Action No.   1:23-cv-183<br><br><br>**NOTICE OF REMOVAL**<br><br>**<u>Electronically Filed</u>** |

**TO:   THE CLERK AND THE HONORABLE JUDGES**
**OF THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Defendant Imperfect Foods, Inc. ("Defendant"), by and through its undersigned counsel of record, hereby files this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey, from the New Jersey Superior Court, Essex County, where the action is now pending, as provided by Title 28, United States Code, Chapter 89 and states:

### STATE COURT ACTION

1.      Plaintiff Alquan Bing ("Plaintiff") commenced this action  against Defendant in the Superior Court of New Jersey, Law Division, Essex County, by the filing of a Complaint, entitled *Alquan Bing vs. Imperfect Foods, Inc., John Does 1-10, and XYZ Corp. 1-10,* bearing Docket No.

ESX-L-007418-22 ("the State Court Action"). The State Court Action is now pending in that court. Attached as **Exhibit A** is a copy of the Summons and Complaint.

2. Through the undersigned counsel, Defendant accepted service of the Summons and Complaint on January 10, 2023.

3. The aforementioned documents constitute all "process, pleadings and orders" served upon Defendant in the State Court Action, pursuant to 28 U.S.C. § 1446(a).

## TIMELINESS OF REMOVAL

4. This Notice of Removal is timely filed within 30 days of January 10, 2023, as required by 28 U.S.C. § 1446(b)(3) ("notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of . . . other paper from which it may first be ascertained that the case is one which is or has become removable").

5. The Notice of Removal was also filed within one year of the commencement of the State Court Action and therefore is timely under 28 U.S.C. § 1446(c)(l).

## DIVERSITY JURISDICTION

6. The United States District Court for the District of New Jersey has diversity jurisdiction in this case based on 28 U.S.C. § 1332.  Diversity jurisdiction exists when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.  *Id.* at § 1332 (a)(1).  As explained below, both of these requirements have been met.

### A.     Citizen of Different States

7. According to Paragraph 3, at the time of the Complaint, Plaintiff is an individual and resident and, upon information and belief, a citizen of New Jersey, as he states he resides in Essex County, New Jersey.  (*See* Ex. A, Compl., ¶ 1).  *Washington v. Hovensa LLC*, 652 F.3d 340,

344 (3d Cir. 2011) (citizenship is determined by domicile); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("Where one lives is prima facie evidence of domicile.").

8.     Defendant is not a citizen of the State of New Jersey.  A corporation such as Defendant is a citizen of the state in which it is incorporated and in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  Defendant is a Delaware corporation with its principal place of business in Walnut, California, where it has its corporate headquarters.  Therefore, Defendant is a citizen of Delaware and California.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1186, 1192-93 (2010) ("principal place of business" of corporation "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is often "metaphorically called its 'nerve center'").

9.     Fictitious defendants are disregarded in determining diversity jurisdiction. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). *See Mucci v. Decision One Mortg.*, No. CIV.A. 12-1840 JLL, 2012 WL 3757035, at *3 (D.N.J. Aug. 9, 2012), *report and recommendation adopted*, No. CIV.A. 12-1840 JLL, 2012 WL 3757290 (D.N.J. Aug. 28, 2012) ("The citizenship of parties with fictitious names such as 'John Doe' or ABC Corporation are disregarded for purposes of determining diversity.").

10.     Thus, because Plaintiff and Defendant are not citizens of the same state, the parties are completely diverse, and removal is proper. 28 U.S.C.§ 1332(a)(1).

**B.     <u>Amount in Controversy</u>**

11.     The amount in controversy requirement of 28 U.S.C. § 1332 is also met, assuming the truth of the allegations in the Complaint and the validity of Plaintiff's claims. Although

Defendant vehemently denies the allegations in the Complaint and contends that Plaintiff is not entitled to any recovery whatsoever, the only relevant question at this stage is whether Plaintiff's Complaint places in controversy an amount in excess of the amount specified by 28 U.S.C. § 1332. Based on the following allegations, the amount in controversy exceeds the sum or value of $75,000.00.  *See* 28 U.S.C. § 1332(a).

12.     The Complaint filed by Plaintiff alleges causes of action for disability discrimination, failure to accommodate, and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), and a violation of the New Jersey Workers' Compensation Statute. (*See* Ex. A, Compl., ¶¶ 64-95).

13.     Although Defendant submits that Plaintiff is not entitled to any recovery, the damages Plaintiff seeks include (but are not limited to): "compensatory damages "of not less than $600,000[,]"lost wages and benefits, back pay, front pay (or reinstatement), damages for humiliation, mental and emotional distress, statutory damages, punitive damages, liquidates damages, attorneys' fees and costs of suit, pre-judgement interest, and "[s]uch other, further, and different relief as the Court deems fitting, just and proper." (*See* Ex. A, Compl., "Wherefore" clause).

14.     Thus, as Plaintiff seeks over $600,000 in compensatory damages alone, the amount in controversy, exceeds the jurisdictional minimum of $75,000.00.[1]  *See Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (aggregating punitive damages and attorney's fees when calculating amount in controversy); *see also Raspa v. Home Depot*, 533 F.Supp.2d 514, 522

---

[1]  Defendant does not concede that Plaintiff's allegations are true or that her claims have any merit. Defendant provides the following only to demonstrate that the amount in controversy, based on the demand and relief sought by Plaintiff, taken as a whole far exceeds the $75,000 jurisdictional requirement.  Thus, this Court has original jurisdiction over the claims asserted by Plaintiffs in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a).

(D.N.J. 2007) (noting that even on its own, "a request for punitive damages will generally satisfy the amount in controversy requirement[.]"); *Angus v. Shiley, Inc.*, 989 F.2d 142, 145-46 (3d Cir. 1993) (recognizing that claims for damages for emotional distress should be included in determining whether the jurisdictional amount is met). *See, e.g., Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 344-345, 374 (App. Div. 2012) (in sex discrimination case for failure to promote and retaliation, court upheld emotional distress damages award of $405,000).

15.     Accordingly, this Court possesses original jurisdiction over this action under 28 U.S.C. § 1331 (a), which provides for original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## VENUE

16.     The United States District Court for the District of New Jersey is the District Court of the United States within which Plaintiff's State Court Action is currently pending.

17.     This Notice of Removal is being filed in the United States District Court for the District of New Jersey, the district court of the United States for the district and division within which the State Court Action is pending, as required by 28 U.S.C. §§ 1441(a) and 1446(a). attached as **Exhibit B** is a copy of the Notice of Filing of Notice of Removal to the Clerk of the New Jersey Superior Court, the original of which will be filed with the New Jersey Superior Court Clerk, Law Division, Essex County as required by 28 U.S.C. § 1446(d).

## NOTICE TO PLAINTIFF

18.     Upon filing of the Notice of Removal, Defendant also gave written notice thereof to Plaintiff's counsel, Ty Hyderally & Associates, P.C., pursuant to 28 U.S.C. § 1446(a).  Attached hereto as **Exhibit C** is a copy of the Notice to Adverse Party of Filing of Notice of Removal, the original of which is being served on Plaintiff's counsel.

19.     By filing this Notice of Removal, Defendant does not waive any objections they may have as to service, jurisdiction, or venue, or any other defenses available to it at law, in equity or otherwise.  Defendant intends no admission of fact or law by this Notice and expressly reserve all defenses and motions.

20.     If the Court should be inclined to remand this action, Defendant requests that the Court issue an Order to Show Cause why the case should not be remanded, providing Defendant an opportunity to present briefing and argument prior to any possible review.  Because a remand order is not subject to appellate review, such a procedure is appropriate.

21.     As required by 28 U.S.C. § 1446(a), this Notice of Removal is signed under Rule 11 of the Federal Rules of Civil Procedure.

## **RELIEF REQUESTED**

22.     Defendant requests that the United States District Court for the District of New Jersey assume jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial of this action.

**WHEREFORE**, Defendant respectfully requests that the foregoing action be removed from the Superior Court of New Jersey, Law Division, Essex County, to the United States District Court for the District of New Jersey.

Respectfully submitted,

**LITTLER MENDELSON P.C.**
*Attorneys for Defendant*
*Imperfect Foods, Inc.*

Dated:  January 13, 2023

*/s/ Lauren J. Marcus*
Lauren J. Marcus
Anastasia Stylianou

6

# EXHIBIT A

**Ty Hyderally, Esq. (ID #023231993)**
**Hyderally & Associates, P.C.**
33 Plymouth Street, Suite 202
Montclair, New Jersey 07042
Telephone (973) 509-8500
Facsimile (973) 509-8501
*Attorneys for Plaintiff, Alquan Bing*

| | |
|---|---|
| **ALQUAN BING,** | **SUPERIOR COURT OF NEW JERSEY** |
| | **LAW DIVISION: ESSEX COUNTY** |
| **PLAINTIFF,** | **DOCKET NO.: ESX-L-7418-22** |
| **VS.** | **CIVIL ACTION** |
| **IMPERFECT FOODS, INC., JOHN DOES 1-10, AND XYZ CORP. 1-10,** | **SUMMONS** |
| **DEFENDANTS.** | |

**IMPERFECT FOODS, INC.**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

## _Michelle M. Smith, Esq._

Michelle M. Smith, Esq.,
Clerk of the Superior Court


DATED: **January 10, 2023**


**Name of Defendant to be served:**

**IMPERFECT FOODS, INC.**

**Address of the Defendant to be served:**


**C/o Lauren Marcus, Esq.**
**Littler Mendelson PC**
**1085 Raymond Blvd, One Newark Center**
**8th Floor, Newark, NJ 07102**


**Phone Number:**


T:\Bing Alquan\Pleadings\011023.SUMS.doc

2

**Ty Hyderally, Esq. (ID #023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
*Attorneys for Plaintiff, Alquan Bing*

| | |
|---|---|
| **ALQUAN BING,** | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: ESSEX COUNTY |
| **PLAINTIFF,** | DOCKET NO.: |
| | |
| **VS.** | CIVIL ACTION |
| | |
| **IMPERFECT FOODS, INC., JOHN DOES 1-10, AND XYZ CORP. 1-10,** | **COMPLAINT AND JURY DEMAND** |
| | |
| **DEFENDANTS.** | |

Plaintiff, Alquan Bing ("Mr. Bing" or "Plaintiff"), residing at 60 Parkway Drive East, East Orange, Essex County, New Jersey 07017, by way of this First Amended Complaint against the Defendants, Imperfect Foods, Inc. ("Imperfect Foods"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

## I.   Nature of Action, Jurisdiction, and Venue

1.   This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("LAD") (Disability Discrimination); (2) a violation of the LAD (Failure to Accommodate); (3) a violation of the LAD (Retaliation); and (4) New Jersey Workers' Compensation Statute, N.J.S.A. 34:15-1 *et seq.*

2.   This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3.   Venue is appropriate in this court since Plaintiff resides in Essex County, New Jersey; and Defendants do business in Essex County, New Jersey.

## II. Parties

4.     Mr. Bing worked for Imperfect Foods from February 2020 until he was terminated on June 21, 2022.

5.     Plaintiff worked for Imperfect Foods at its office located at 307 East Park Street, Moonachie, New Jersey, and throughout the State of New Jersey.

6.     At all times referred to in this complaint, employees of the corporate defendant who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or the corporate defendant ratified, embraced, and added to their conduct to the extent that their actions exceeded the scope of their employment.

7.     Plaintiff was an employee of the defendant corporation and performed job-related duties in the State of New Jersey.

8.     During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, supervised Plaintiff, and aided and/or abetted in the commission of conduct complained of herein, and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, defendants ratified, embraced and added to his conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

9.     During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

## III. Factual Allegations

10.     In February 2020, Mr. Bing began working for Imperfect Foods through a temporary work agency as a CDL-A Truck Driver.

11.     In October 2020, Imperfect Foods hired Mr. Bing as a permanent employee due to his exemplary work performance.

12.     Mr. Bing was hired to commence full-time employment as a CDL-A Truck Driver at a rate of pay of $28.50 per hour.

13.     Mr. Bing's job duties at Imperfect Foods included operating a truck and making deliveries from Moonachie, New Jersey to other cities and states.

14.     On Friday, April 29, 2022, while at work at Imperfect Foods, Mr. Bing was rear-ended by another truck driver.

15.     Due to the severity of his injuries, Mr. Bing sought medical treatment at the company's authorized medical facility, Concentra Medical Center in Newark, New Jersey, that same day.

16.     The doctors diagnosed Mr. Bing with neck muscle strain and thoracic myofascial sprain, prescribed medication, noted work limitations, stated specifically that Mr. Bing could not drive the company truck, cleared a return to work on April 30, 2022, with limitations, and noted a follow up on May 4, 2022. (Exhibit "1").

17.     Mr. Bing informed his supervisor, Mr. Todd Peirone ("Mr. Peirone"), of the details of his medical condition and gave him a copy of the medical note, on April 29, 2022. (Exhibit "2").

18.     On Monday, May 2, 2022, Mr. Bing called the office to speak with Mr. Peirone.

19.     Mr. Peirone and Ms. Michelle Petr ("Ms. Petr"), Human Resources representative, told Mr. Bing to complete 360 learning and light duty programs, via Imperfect Foods' "learning system," instead of his usual job duties, from 7:00 a.m. to 5:00 p.m., Monday through Friday.

20.     Thus, Mr. Bing began the learning system sessions.

21.     Despite the fact that Mr. Bing was on an approved light duty program, Mr. Peirone constantly harassed him with questions as to when Mr. Bing would return to work full duty.

22.     Mr. Bing kept Mr. Peirone fully apprised of his disability, treatment, medical appointments, and progress during each of these interactions. (Exhibits "3" and "4").

23.     On or about May 11, 2022, Mr. Bing observed that the only 360 learning programs he had not completed were locked and, therefore, unavailable for him to complete.

- 3 -

24.     Thus, Mr. Bing sent a message to Ms. Petr to advise her of the situation and asked if she could unlock additional programs so that he could continue doing programming on the light duty app. (Exhibit "5').

25.     On May 13, 2022, Mr. Bing followed up by calling Ms. Petr to once again discuss the situation.

26.     Ms. Petr acknowledged that Mr. Bing had done all the available trainings and stated she would investigate the situation and get back to him.

27.     While Mr. Bing was waiting for Ms. Petr to open up training programs, he proactively reviewed available videos and pamphlets in order to be compliant with the mandate that he do training between the hours of 7:00 a.m. to 5:00 p.m., Monday through Friday.

28.     On May 18, 2022, Mr. Peirone sent Mr. Bing yet another message demanding to know when Mr. Bing would be cleared to return to work. (Exhibit "6").

29.     Mr. Bing responded with details of his interactions with his treating physician and the potential of his return to full duty. (Id.)

30.     Unfortunately, on May 28, 2022, the company's authorized doctor informed Mr. Bing that he had to remain on modified duty.

31.     Mr. Bing immediately sent the doctor's note to Mr. Peirone. (Exhibit "7").

32.     Mr. Bing updated Mr. Peirone on June 1, 2022, and June 10, 2022. (Exhibits "8" and "9").

33.     The Friday June 10, 2022, update noted that Mr. Bing needed an MRI and more physical therapy sessions. (Exhibit "9").

34.     The very next business day, Monday, June 13, 2022, Mr. Peirone asked Mr. Bing why he had entered hours on Friday, June 10, 2022. (Exhibit "10").

35.     The question made no sense, as Mr. Bing had done exactly what he was told to do. Thus, Mr. Bing answered that was following the company's directive to work Monday through Friday. (Id.)

36.     On June 16, 2022, Mr. Bing received a call from Ms. Petr and Marvita (last name unknown), head of Human Resources at Imperfect Foods.

37.     During this call, Ms. Petr asked Mr. Bing if he was continuing to complete the light duty programming as directed and asked how much longer Mr. Bing would be on light duty.

- 4 -

38.      Mr. Bing was surprised by the question, as Ms. Petr was well aware that Mr. Bing was completing his light duty programming, and Mr. Bing had provided updates from the company's prescribed Concentra doctor to the company.

39.      Mr. Bing responded that he was continuing to do the training, via the light duty app, noted that he had sent Ms. Petr messages about the locked programs, stated that he was still treating with the company doctors, and noted that he hoped to be back to full duty soon as his neck mobility was improving.

40.      Ms. Petr admitted that Mr. Bing had sent her such messages and that she was aware that he had done the trainings.

41.      Mr. Bing added that he had to repeat some of the videos and pamphlets, as the 360 programs were still locked.

42.      No one had ever questioned Mr. Bing about his work hours or the training that he was doing until this phone call.

43.      On June 21, 2022, Mr. Peirone and Ms. Petr called Mr. Bing and told him that he was terminated for stealing time.

44.      Mr. Bing was shocked by the clearly discriminatory and retaliatory action of the company.

45.      Mr. Bing noted that not only was the accusation completely false, but numerous employees had made mistakes with entering time, and were not terminated.

46.      Other drivers such as Chris (lnu), Damon (lnu), Juan (lnu), Daniel (lnu), and Luciann (lnu), had forgotten to clock out and were not terminated, as Defendants were well aware.

47.      Mr. Peirone simply responded that the decision had been made.

48.      Subsequently Mr. Bing received a termination letter, dated June 21, 2022, that contained pretextual, new, and fabricated reasons for terminating Mr. Bing. (Exhibit "11").

49.      The letter alleged that Mr. Bing had no training activity for 1 ½ months, when he clearly had engaged in training.

50.      In fact, Defendants had acknowledged that Mr. Bing fulfilled his training obligations.

51.      Further, no one had ever accused Mr. Bing of not doing training for 1 ½ months – until he received the termination letter.

52.      Further, the letter alleged that Mr. Bing had been logging an average of 46 hours a week.

- 5 -

53.     Mr. Bing was told to work from 7:00 a.m. to 5:00 p.m., and thus was authorized to work up to 50 hours a week.

54.     However, Mr. Bing usually took a 30-minute lunch break, which brought his weekly hours to approximately 47.5 hours a week.

55.     Thus, the allegation made no sense.

56.     Further, the letter falsely accused Mr. Bing of admitting to falling asleep, whereas Mr. Bing had never made such a statement.

57.     In fact, Mr. Bing found this accusation to be especially indicative of Defendants' discriminatory animus, as Defendants were well aware that one of the potential side effects of the medication Mr. Bing was prescribed was drowsiness.

58.     The true reason Defendants terminated Mr. Bing was due to his disability, request for accommodation, and in retaliation for Mr. Bing suffering a disability, requiring accommodations due to his disability, and resulting inability to return to full duty in a timelier fashion.

59.     Additionally, a reason that Defendants terminated Mr. Bing was because he suffered a workers' compensation injury and sought workers' compensation benefits.

60.     At the time of his termination on June 21, 2022, Mr. Bing was receiving compensation of approximately $99,750 per year.

61.     In addition, Defendants' unlawful actions have caused Mr. Bing to suffer severe emotional and physical harm, including but not limited to symptoms of depression and anxiety.

62.     Further, Mr. Bing received medical benefits, dental coverage, prescription coverage, life insurance, 401K, two weeks' paid vacation, personal days, sick days, long-term and short-term disability, company paid holidays, etc.

63.     These benefits of employment make up Mr. Bing's claim for damages.

**Count I**
**LAD**
**(Disability Discrimination)**

64.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

- 6 -

65. The foregoing facts and circumstances demonstrate that Defendants have violated the LAD by discriminating against Plaintiff due to Plaintiff's disability.

66. Plaintiff suffered a disability/medical condition due to the motor vehicle accident.

67. Defendants' own prescribed and approved doctor noted that Plaintiff suffered a significant injury that impaired his ability to function fully, noted his inability to return to his regular position, and noted a need for a modified position for a limited time period.

68. Defendants were able to accommodate Plaintiff while he recovered by having him engaged in light duty activities.

69. Despite this, Defendants fabricated reasons to terminate Plaintiff and terminated him due to the fact that he was disabled and unable to return to his regular position.

70. Defendants' own prescribed doctor authorized Plaintiff to return to full duty on July 11, 2022.

71. Despite this, Defendants terminated Plaintiff on June 21, 2022.

72. Defendants terminated Plaintiff while he was on an approved light duty due to his medical condition/disability.

73. Further, Defendants did not contact Plaintiff after July 11, 2022, to allow him to return to work.

74. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

75. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count II**
**LAD**
**(Failure to Accommodate)**

76.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

77.     The foregoing facts and circumstances demonstrate that Defendants have violated the LAD by failing to reasonably accommodate Plaintiff due to his disability/medical condition.

78.     Defendants' own prescribed doctor noted that Plaintiff needed to be on a continued light duty.

79.     Defendants terminated Plaintiff due to Defendants' decision to disallow Plaintiff to continue on light duty.

80.     Plaintiff needed to be on light duty until only July 11, 2022.

81.     Despite this, Defendants terminated on June 21, 2022.

82.     Defendants terminated Plaintiff while he was on an approved light duty due to his medical condition/disability.

83.     As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

84.     Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count III**
**LAD**
**(Retaliation)**

85.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

86. The foregoing facts and circumstances demonstrate that Defendants have violated the LAD by retaliating against Plaintiff for engaging in the protected activity of taking disability leave and/or medical leave, and/or seeking reasonable accommodations, and/or complaining about discrimination and retaliation.

87. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

88. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count IV
### (New Jersey Workers' Compensation Statute, N.J.S.A. 34:15-1 *et seq.*)

89. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

90. Plaintiff suffered a work-related injury and sought to obtain workers' compensation to cover the physical injury.

91. Plaintiff retained counsel to pursue a workers' compensation claim under the statute.

92. Defendants terminated Plaintiff because he pursued a workers' compensation claim.

93. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Workers' Compensation Statute, N.J.S.A. 34:15-1 *et seq.* by retaliating against Plaintiff for filing for workers' compensation and/or discharging, threatening to discharge, intimidating, or coercing Plaintiff by reason of Plaintiff's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

94. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical

injury.  Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

95.     Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against Defendants, jointly and severally, as follows:

A.     Compensatory damages of not less than $600,000;

B.     Damages for lost wages and benefits, back pay, front pay (or reinstatement);

C.     Damages for humiliation, mental and emotional distress;

D.     Statutory damages, if applicable;

E.     Punitive damages and or liquidated damages where permitted by law;

F.     Attorneys' fees and costs of suit;

G.     Lawful interest – including pre-judgment interest on lost wages;

H.     Lawful interest – including pre-judgment interest on any wages not paid in a timely manner; and

I.     Such other, further, and different relief as the Court deems fitting, just, and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to *Rule* 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with *Rule* 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of Plaintiff.

## *R.* 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to *R.* 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or, in the alternative, state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:  December 13, 2022    **HYDERALLY & ASSOCIATES, P.C.**
                   *Attorneys for Plaintiff*

                **By:**_____
                   **TY HYDERALLY, ESQ.**

T:\Bing Alquan\Pleadings\121322.COM.docx

- 11 -

# Exhibit "1"

Number: 937886

Newark, NJ 07114
Fax: 973-643-8609

Service Date: 05/2...
Case Date: 04/25...

**...tus Report**

Patient: Alquan S Bing

Date of Birth: ...
Contact: Michelle ...
Role: Primary Custo...
Phone: 240-...
Fax: ...

Address: 60 Parkway Drive E EAST ORANGE, NJ 07017

Employer Location: ...
Address: ...E Park...
(070/4-113)

Home:
Work:                                          Authorized by: Michelle

## THIS VISIT            Visit Type: Recheck

Treating Clinician: Rachel Canseco-Berbanc, M.D.

Diagnosis:
Thoracic myofascial strain, initial encounter (S29.019A)
Strain of neck muscle, initial encounter (S16.1XXA)

## PATIENT STATUS

Employer Notice: The prescribed activity recommendations are suggested guidelines ...
informed that the activity prescription is expected to be followed at work and away fro...

**Treatment Status:**
Returning for follow-up:   7days
Treatment Status Comment: Start PT

**Work Status:**
Return to modified work/activity today
Patient may work their entire shift

**Activity Prescription:**
Key: Occasionally = up to 3 hrs/day, Frequently = up to 6 hrs/day, Constantly ...

May lift up to 15 lbs constantly
May push/pull up to 20 lbs constantly
May not drive company vehicle due to functional limitation ...
motion of the neck

## NEXT VISIT(S)

Patient Notice: It is essent...
your recovery that you keep ...
scheduled appointments, but ...
should you need to reschedule ...
cancel, please contact the clini...
Thank you for your cooperation.

Visit Date and Time

Visit Type

Work Activity Status Report

# Exhibit "2"

# Exhibit "3"

10:48

< Aaa Todd Imperfect >

**TP** New name and photo available  Update  ✕
Todd Peirone

Sorry man. Thxs 🙏

Wed, May 4, 12:41 PM

Any update

Go to doctors at one neck . Idk yet

Copy let me know

Copy

Wed, May 4, 4:33 PM

There making me go thru therapy to get cleared  6 section.

They give a time line



iMessage

# Exhibit "4"

10:41 7

< · Aaa Todd Imperfect >

**New name and photo available**
Todd Peirone
Update ✕

Based on the Department of Labor definitions

**NEXT VISIT(S)**   Visit Date and Time:   Visit Type:
                                           Medical  Therapy
**Patient Notice:** It is essential to   05/11/2022 12:00 PM   ☑   ☐
your recovery that you keep your
scheduled appointments, but
should you need to reschedule or
cancel, please contact the clinic.
Thank you for your cooperation.

▶ ||┃|┃|┃|┃|┃|┃|┃|┃| 00:38

Copy that guess you got a lot of
videos to watch

I guess so smh 🗿

I have to call Hr tomorrow to give
her an up date as well.

Copy

Wed, May 11, 2:23 PM

How's it go ?

Started therapy today. Have six
sections to complete

They give you a time frame
For return to work ?

iMessage

Aaa Todd Imperfect ›

**New name and photo available**
Todd Peirone

Update

Wed, May 11, 2:23 PM

How's it go ?

Started therapy today. Have six sections to complete

They give you a time frame
For return to work ?

I'm in therapy right now but my paperwork still say modified work. But I'll go back downstairs to ask the doctor when I'm finish

Copy
Let me know cause the new guy called out

Wed, May 11, 3:40 PM



iMessage

# Exhibit "5"

On Wed, May 11, 2022 at 3:49 PM Michelle Petr <michelle.petr@imperfectproduce.com> wrote:
Hi Quan,

I sure can! What video are you stuck on or having technical issues with?



All the best,
**Michelle Petr** (she/her/hers)
People Generalist- East
imperfectfoods.com

On Wed, May 11, 2022 at 3:48 PM Al-quan Bing  > wrote:
Can you look into the training videos cause it's not letting me do some..

On Mon, May 2, 2022 at 4:01 PM Michelle Petr <michelle.petr@imperfectproduce.com> wrote:
Hi Alquan,

Thank you for speaking with me today. I am sending all my positive, healing vibes your way. Attached below is the modified duty worksheet that shows that we can accommodate light duty in the form of watching training videos from home beginning tomorrow, May 3, 2022. . Please sign off on this and send it back to me when at your earliest convenience.

Rest up and get better soon!



All the best,
**Michelle Petr** (she/her/hers)
People Coordinator- East
imperfectfoods.com





# Exhibit "6"

**Aaa Todd Imperfect** ›

**New name and photo available**
Todd Peirone

Update  ✕



She said compete the therapy section.

Wed, May 18, 9:19 AM

Keep me posted today
If your cleared
I need to give this new kid a break
I've been killing him
Last two weeks

I'll keep posted this my second therapy section. Last week she said I have to complete 6 . But I'll see what she says..
by the way maybe they need to break that route back to four it kills anyone.

She said after all Therapy is done. She may lift Restrictions next week

iMessage

# Exhibit "7"

wark New Jersey
Newark, NJ 07114
Fax:  973-643-8609

Service Date: 05/2
Case Date: 04/29

m Number: 937686                Phon

tus Report

Date of Birth:

atient: Alquan S Bing              Last 4 Digits in              Contact:  Marquda St Hill

dress:  60 Parkway Drive E EAST ORANGE,   Employer Location:              B/V Magna      Role:  Primary Quntact
        NJ 07017                  Address:  307 E Park          Kearne  NJ    Phone:  240-788-1159
                                           07074-113                         Fax:
Home:                                      Authorized by:  Michelle
Work:

**THIS VISIT**              Visit Type: Recheck                    Time in                  Time out

           Treating Clinician: Rachel Canseco-Berbano, M.D.

Diagnoses:
 Thoracic myofascial strain, initial encounter (S29.019A)
 Strain of neck muscle, initial encounter (S16.1XXA)

---

**PATIENT STATUS**

**Employer Notice:** The prescribed activity recommendations are suggested guidelines
informed that the activity prescription is expected to be followed at work and away

   **Treatment Status:**
   Returning for follow-up:  7days
   Treatment Status Comment: Start PT

   **Work Status:**
   Return to modified work/activity today
   Patient may work their entire shift

   **Activity Prescription:**
   Key: **Occasionally** = up to 3 hrs/day; **Frequently** = up to 6 hrs/day; **Constantly**

   May lift up to 15 lbs constantly
   May push/pull up to 20 lbs constantly
   May not drive company vehicle due to functional limitations
   motion of the neck

Based on the Department

**NEXT VISIT(S)**              Visit Date and Time              Visit Type:

**Patient Notice:** It is essent
your recovery that you keep
scheduled appointments, but                                    Medical  Therapy  Service
should you need to reschedule
cancel, please contact the clinic
Thank you for your cooperation

**Work Activity Status Report**

10:41 ◀

**A**

Aaa Todd Imperfect ›

**TP**  **New name and photo available**    Update    ✕
Todd Peirone

**NEXT VISIT(S)**        Visit Date and Time:    Visit Type:        Clinician:

05/18/2022 09:00 AM    ☑ ☐ ☐    Purvee Patel

**She said compete the therapy
section.**

Wed, May 18, 9:19 AM

Keep me posted today
If your cleared
I need to give this new kid a break
I've been killing him
Last two weeks

**I'll keep posted this my second
therapy section. Last week she said
I have to complete 6 . But I'll see
what she says..
by the way maybe they need to
break that route back to four it kills
anyone.**

**She said after all Therapy is done.
She may lift Restrictions next week**

iMessage

# Exhibit "8"

10:42

< **A**

Aaa Todd Imperfect >

TP  **New name and photo available**   Update   ×
Todd Peirone

Wed, Jun 1, 8:01 AM

Keep me posted today

Wed, Jun 1, 11:33 AM

How's it going

At doctor

Not cleared. MRI visit

When's the MRI?

Idk. She'll tell me next week visit
after therapy

Next visit 10th

Wed, Jun 8, 6:41 PM

Need the booster shot also please
get the done over the weekend as
well

Fri, Jun 10, 6:52 AM

Make sure yiu get your booster
Before the 15th

iMessage

# Exhibit "9"

10:42 ◀

← A 🔍

Aaa Todd Imperfect ›

TP  **New name and photo available**      Update   ✕
     Todd Peirone

Fri, Jun 10, 6:52 AM

Make sure yiu get your booster
Before the 15th

They're just gonna let people go if
it's not done

Fri, Jun 10, 2:18 PM

I'll get around to it.

How's the mri ??

Didn't have it today they said
Insurance company got to schedule
the appointment so till that
happened they put me back in
more therapy

Mon, Jun 13, 8:42 AM

How's the booster going

And quick question
Why do you have hours for Friday in
Scheduled is Sunday to Thursday
Or you can do Monday to Friday

iMessage

# Exhibit "10"

10:42 ✔

‹   A   ▢

Aaa Todd Imperfect ›

TP  **New name and photo available**   Update   ✕
     Todd Peirone

Fri, Jun 10, 6:52 AM

Make sure yiu get your booster
Before the 15th

They're just gonna let people go if
it's not done

Fri, Jun 10, 2:18 PM

I'll get around to it.

How's the mri ??

Didn't have it today they said
Insurance company got to schedule
the appointment so till that
happened they put me back in
more therapy

Mon, Jun 13, 8:42 AM

How's the booster going

And quick question
Why do you have hours for Friday in
Scheduled is Sunday to Thursday
Or you can do Monday to Friday

iMessage

10:42 ⚡

**Aaa Todd Imperfect** ›

TP   **New name and photo available**   Update   ✕
Todd Peirone

I sign in Monday-Friday.

I have a personal doctor appointment with my doctor on the booster situation.

HR will be informed of that status before my return..

I see it
In adp it is Monday to Friday

Let's keep it consistent
At 7-5 daily

Copy

Tuesday 11:18 AM

Morning
Can you give me a call before 12 today if your available
If not please give me a a good time your available please

Tuesday 12:32 PM

I'm available now.

iMessage

# Exhibit "11"



**IMPERFECT**
FOODS

**To:**        Alquan Bing, Delivery Truck Driver

**From:**     Todd Peirone, Delivery Supervisor

**Date:**     June 21, 2021

**Re:**        Termination of Employment

---

**Dear Mr. Bing:**

This letter is to inform you that your employment with Imperfect Foods, Inc. will be ending effective **June 21, 2022.** In accordance with the Company's at-will employee policy which permits the Company or you to terminate employment at any time, we are permitted to separate employees with or without cause.

Your termination is the consequence of you failing to meet and sustain Imperfect Foods Conduct Policy which addresses Theft (including time theft). Imperfect Foods is consistent and fair in the administration of said policy. Theft of money (including time theft) or property from the Company, your co-workers or customers is strictly prohibited. During the time period of 5/4/2022 to 6/15/2022, you logged an average of 46 hours, per week, on your timesheets. You were paid for these hours. Upon investigation and cross-referencing with your training activity on Imperfect Foods' learning system, it was verified that you did not have any training activity during the time period of 5/4/2022 and 6/15/2022. In addition, when asked about the discrepancy between your training activity and time logged in your timesheets, you admitted to falling asleep. This is considered time theft and a violation of Imperfect Foods Standards of Conduct.

Your final paycheck will be provided to you via direct deposit on the next regularly scheduled payday as per New Jersey law, which will include less standard deductions including any accrued but unused vacation time.

Your health insurance benefits will continue through **June 30, 2022** if applicable. Your rights to continue coverage under COBRA will be provided to you by mail from our plan administrator.

You can contact T. Rowe Price, our retirement administrator at 1-800-354-2351 regarding your retirement plan distribution options if applicable.

You will no longer receive a free employee box, effective **June 21, 2022.** Your subscription will be canceled however, you can reactivate your account if you choose to continue our services.

In conclusion, we would also like to take this opportunity to remind you of your continued obligation of confidentiality relating to any intellectual property to which you may have contributed while employed by the Company.

If you have any questions concerning the information contained in this letter, please contact me directly or your People Business Partner, Marbeda St. Hillaire. All benefit information will be mailed to the address we have on file for you.

Sincerely,

Todd Peirone
Delivery Supervisor

# Civil Case Information Statement

## Case Details: ESSEX | Civil Part Docket# L-007418-22

**Case Caption:** BING ALQUAN  VS IMPERFECT FOODS, INC .

**Case Initiation Date:** 12/13/2022

**Attorney Name:** TY HYDERALLY

**Firm Name:** HYDERALLY & ASSOCIATES, P.C.

**Address:** 33 PLYMOUTH ST STE 202

MONTCLAIR NJ 07042

**Phone:** 9735098500

**Name of Party:** PLAINTIFF : Bing, Alquan

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Alquan Bing?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO

　　**If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO

　　**If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/13/2022

Dated

/s/ TY HYDERALLY

Signed